**FILED**

OCT 1 3 2015

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| JESSICA FLEMING, | ) | |
| | ) | **15 CV 9036** |
| Plaintiff, | ) | **JUDGE ELLIS** |
| | ) | **MAGISTRATE JUDGE COX** |
| v. | ) | |
| | ) | |
| THE CHICAGO SCHOOL OF PROFESSIONAL | ) | |
| PSYCHOLOGY; MICHAEL FOGEL (in his | ) | |
| professional capacity); DARLENE PERRY (in her | ) | |
| professional capacity), ELLIS COPELAND (in his | ) | |
| professional capacity), MICHELE NEALON- | ) | |
| WOODS | ) | |
| (in her professional capacity), | ) | |
| DOES I-X, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT**

**COMPLAINT AND DEMAND FOR TRIAL**

COMES NOW, Plaintiff, Jessica Fleming, pro se, and hereby complains and alleges against the above-named Defendants, and each of them, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

## INTRODUCTION

This is a Complaint for damages and injunctive and relief brought by a former student of The Chicago School of Professional Psychology (hereinafter referred to as the "TCS"). Plaintiff relies on the 2009-2010 TCS Academic Catalog and Student Handbook Student Rights and Responsibilities, the 2009-2010 TCS Forensic Psychology Program Handbook, all contracts between the plaintiff and TCS pertaining to her 2009-2010 practicum/internship, the American Psychological Association's Ethical Code of conduct and procedures, the Academic Development Plan (hereinafter referred to as ADP) signed and agreed upon by the plaintiff and TCS in Spring of 2010, and correspondence between the plaintiff, TCS, and third parties regarding her tenure at TCS. The plaintiff alleges TCS committed breach of contract, fraudulent inducement and concealment of fact, civil conspiracy, and defamation per se claims in reference to her unlawful dismissal from TCS, the termination of her internship, the plaintiff's willful conspiracy to mislead the plaintiff at various points in during and after her tenure at TCS, the defamation of her character, the plaintiff's loss of liberty, and emotional distress caused to the plaintiff.

## PARTIES & JURISDICTION

1.    This Court has jurisdiction over the claims set forth in this action pursuant to 28 U.S.C. Section 1332 (diversity of citizenship) as each Defendant is a citizen of the State

of Illinois and the Plaintiff is a citizen of the State of Nebraska and the amount in

controversy exceeds the sum or value of $75,000.00.

2.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. 1391(b)

in that the claims arose in this district, and the Plaintiff is located in this district.

3.      Plaintiff, JESSICA FLEMING, at all relevant times was a citizen of the State of

Nebraska and was a student at The Chicago School of Professional Psychology in

Chicago, Illinois.

4.      Defendant, THE CHICAGO SCHOOL OF PROFESSIONAL PSYCHOLOGY is

a not for profit corporation incorporated in Illinois that operates The Chicago School and

whose principal place of business is Chicago, Illinois.

5.      Defendant, MICHAEL FOGEL at all times relevant was the Department Chair at

The Chicago School of Professional Psychology. He is believed to be a citizen of the

State of Illinois.

6.      Defendant, DARLENE PERRY, at all times relevant was a professor at The

Chicago School of Professional Psychology. She is believed to be a citizen of the State of

Illinois.

7.      Defendant, ELLIS COPELAND at all times relevant was the Dean of Academic

Affairs at The Chicago School of Professional Psychology. He is believed to be a citizen

of the State of Illinois.

8.      Defendant, MICHELE NEALON-WOODS at all times relevant was the National

President of The Chicago School of Professional Psychology. She is believed to be a

citizen of the State of California.

9.     That the true names or capacities, whether individual, corporate, associate or otherwise, of Defendants DOES I through X are unknown to Plaintiff, who therefore, sues said Defendants by such fictitious names.

10.     Plaintiffs were at all times relevant employees or agents of TCS and thus TCS is responsible for their actions through respondeat superior.

11.     Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as DOES are responsible in some manner for the events and happenings referred to in this action and proximately caused damages to Plaintiff as herein alleged, and that Plaintiff will ask leave of this Court to amend this Complaint, to insert the true names and capacities of said Defendants, and when the same have been ascertained to join such Defendants in this action.

12.     At all times relevant hereto, and in all their actions described herein, Defendants' actions took place in the State of Illinois.

13.     Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

## GENERAL FACTUAL ALLEGATIONS

14.     Jessica Fleming was a student at TCS between 2008 and 2010.

15.     Ms. Fleming's academic advisor during this time was Dr. Perry Meyers.

16.     Ms Fleming was reviewed for academic compliance (per the Forensic Psychology Handbook policy) every semester she attended TCS, as was every student in the Forensic Psychology Program.

17.     Ms. Fleming was found to have sufficiently met academic expectations every

semester she was evaluated

18.     A student must be reviewed and allowed to advance into their

practicum/internship, and Ms. Fleming was reviewed and found to be a competent

master's candidate and allowed to proceed to her internship.

19.     Ms. Fleming completed an online application and signed a contract with TCS to

participate in the practicum/internship program.

20.     TCS guaranteed that any internship that a student was allowed to apply to would

meet their graduation requirements for their academic program.

21.     Ms. Fleming applied to and was accepted to 2 internships but was told that one

may not be available, and was told if she chose it she may not have an internship for the

Fall of 2010.

22.     Ms. Fleming chose the internship site that the internship coordinator advised

would allow her to meet her graduation requirements, and was accepted by Anixter

Center to complete her practicum/internship.

23.     The internship at Anixter Center ultimately did not meet expectations for

graduation as it did not contain a basis to apply forensic theory due to the clientele it

served.

24.     Ms Fleming enrolled in and completed a "Diversity in Forensic Psychology"

course taught by Dr. Darlene Perry during the Summer of 2009.

25.     Ms. Fleming received marks of mostly "A" in her "Diversity in Forensic

Psychology" course, including feedback from Dr. Darlene Perry stating she was doing

very well in the course.

26.     Dr. Perry Meyers inquired casually to Dr. Darlene Perry about Ms. Fleming's

progress during the Summer of 2009, and was told Ms. Fleming was having no issues.

27.     Ms. Fleming enrolled and completed a "Theories of Counseling and

Psychotherapy" course the Summer of 2009.

28.     The "Theories of Counseling and Psychotherapy" course did not include or

mention forensic theories of counseling and thus did not adequately prepare students for

their internships.

29.     During the Fall of 2009, Ms. Fleming was enrolled in the Practicum I section of

the internship program with Ms. Ellie Feldman.

30.     An assignment based on a case study was given during the first few weeks of the

course in which the students were to write a short mental health assessment and summary

including an application of traditional and forensic theories of counseling to the case

study.

31.     When the assignment was discussed on a later date, it was revealed that each

student had completed it similarly, but that each student had also completed the

assignment incorrectly. It was at this point it was learned that the students were to have

learned forensic theory as well as the correct format to complete the case study during

their "Theories of Counseling and Psychotherapy" course, but had not.

32.     During the Fall of 2009, it was learned throughout the Forensic Department that

most students taking their internship at that time did not know forensic theory nor did

they know the correct format to write a case study. The department made it seem as if

they were willing to accommodate students during this time to ensure they met

graduation requirements due to their error.

33.     Eight months into Ms. Fleming's internship she was told that she received low scores on her practicum evaluation and needed extra assistance to improve them.

34.     Ms. Fleming was presented with an ADP in January of 2010 and agreed to complete it.

35.     Ms. Fleming completed all aspects of the ADP.

36.     Ms. Fleming was told March of 2010, 6 weeks after beginning the ADP, that she would be removed from her internship 3 months before its end date and that she would be given an "F" in her internship course 1 month before it was to end.

37.     Ms. Fleming was subsequently referred to the TCS Student Affairs Committee April of 2010 on the basis of her failing her internship.

38.     Ms. Fleming's internship was never discussed during the Student Affairs meeting.

39.     During the Student Affairs meeting, Ms. Fleming was presented with various erroneous facts about herself that were never substantiated with any evidence.

40.     One of the erroneous comments made against Ms. Fleming was a letter written by Dr. Darlene Perry stating, among other things, that Ms. Fleming failed every assignment that was given to her during the "Diversity in Forensic Psychology" course taken Summer of 2009.

41.     Ms. Fleming's academic advisor submitted a statement saying that Ms. Fleming, to his knowledge, had no difficulty in any course, including Dr. Darlene Perry's course, of which he had a conversation with Dr. Darlene Perry about during the Summer of 2009.

42.     The Student Affairs Committee decided to dismiss Ms. Fleming on the basis that she had not improved in her internship and noted other "academic difficulties" as their reasoning behind the dismissal.

43.     Ms. Fleming never had any academic difficulties outside of her internship, evidence by the fact she was reviewed numerous times and was found to be a promising master's candidate allowed to proceed to internship.

44.     Ms. Fleming went from being a promising master's candidate in good academic standing to a dismissed student in 1 day.

45.     Ms. Fleming received marks of "A" in every graded course she took the semester she was dismissed.

46.     Ms. Fleming appealed the Student Affairs Committee's dismissal decision within the required timeframe.

47.     Ms. Fleming submitted new evidence in her appeal as it is described in the TCS handbook. This new evidence consisted of assignments from the "Diversity in Forensic Psychology" course returned to Ms. Fleming by Dr. Darlene Perry, on which were comments by Dr. Darlene Perry not only giving Ms. Fleming praise for her good work and self-awareness, but also contained marks of "A" on each assignment.

48.     On June 1, 2010, Dr. Ellis Copeland acknowledged that Ms. Fleming submitted new evidence and moved the original decision date of June 1, 2010 to a later date of June 7, 2010 to accommodate his investigation into this new evidence.

49.     On June 1, 2010, Dr. Ellis Copeland discussed with Ms. Fleming in his office on campus what her options were, and stated that he discussed with her academic advisor and was offering the option of Ms. Fleming completing the Forensic Psychology Program as a thesis student as opposed to the clinical route she had initially taken through her internship.

50.     Ms. Fleming agreed to this offer in writing on June 1, and Dr. Ellis Copeland acknowledged that acceptance the same day.

51.     Dr. Copeland went to investigate the new evidence that Ms. Fleming produced with the originator, Dr. Darlene Perry, and stated he "took her word for it" when he was told what she wrote about Ms. Fleming was truthful.

52.     Dr. Ellis Copeland subsequently denied Ms. Fleming's appeal of her dismissal stating she did not submit new evidence.

53.     Ms. Fleming then met with the president of the Chicago Campus, Dr. Carol Craddock, and was told that she was never offered to complete the program as a thesis student and that she was no longer allowed on campus as she was a dismissed student.

54.     Ms. Fleming then wrote to various academic agencies, one of which was the Illinois Board of Higher Education.

55.     When Ms. Fleming inquired as to TCS's position on the matter, she was met with a letter from Dr. Michele Nealon-Woods stating among many things, that Ms. Fleming did not have a right to have anything removed from her academic records because it was not possible, that faculty could say whatever they wanted about students whether true or false, and that TCS considered the matter resolved.

56.     Ms. Fleming was never offered a FERPA hearing as was TCS's responsibility per her rights through the Family Education Rights and Privacy Act.

57.     In the fall of 2011, Ms. Fleming demanded a FERPA hearing. She was granted that hearing and the comments from Dr. Darlene Perry were removed due to their erroneous and misleading nature.

## FIRST CAUSE OF ACTION

### *BREACH OF CONTRACT*

58.     The Forensic Psychology Program Handbook and the TCS Academic Handbook are both written contracts that specify what a student is required to accomplish to be awarded a degree.

59.     TCS breached these contracts when it did not honor their commitments as stated in these handbooks to provide an adequate education in Forensic Psychology, particularly because they did not provide appropriate internship sites for all students that met their graduation goals, and also because it did not provide an education in forensic theory, which was a crucial part of the criteria to complete the Forensic Psychology program.

60.     TCS did not honor Ms. Fleming's appeal of her dismissal and violated the instructions stated within the TCS Academic Handbook that state a student is entitled to an appeal of a dismissal decision if new evidence is presented.

61.     Ms. Fleming had a written contract with TCS to participate in and complete her practicum/internship.

62.     Ms. Fleming was placed on an ADP in the Spring of 2010. She was given 6 weeks to finish the ADP. TCS agreed to review the ADP for completion after 6 weeks and to revise the ADP if it was not helpful to Ms. Fleming. Ms. Fleming was not allowed to finish the ADP and was subsequently removed from her internship 6 weeks after being given the ADP. She was then referred to the Student Affairs Committee where she was dismissed.

63.     Ms. Fleming petitioned for program completion January 8, 2010, showing that Ms. Fleming had no idea she would not be graduating Summer 2010.

64.    TCS breached all contracts with Ms. Fleming when it ended her internship abruptly and without cause. The decisions made by the Defendants to remove Plaintiff from the Chicago School were arbitrary and capricious in nature, and are in violation of the internship they held with Ms. Fleming, TCS's Academic Handbook, the TCS Forensic Psychology Handbook, and the American Psychological Association's ethical code of conduct and procedures.

65.    As a result of the breaches of contract committed against the Plaintiff, she has been damaged, as described above in an amount of two hundred and fifty thousand dollars ($250,000).

## SECOND CAUSE OF ACTION

### FRAUD

66.    The national president of TCS, Dr. Michele-Nealon Woods, specifically stated in her October 14, 2010 response to the Illinois Board of Education (hereinafter referred to as IBHE) that sections of the referral to the Student Affairs Committee were not capable of being removed from a student's academic record.

67.    Dr. Michele Nealon Woods thus made a false statement of material fact that she knew to be false with the intent to induce Ms. Fleming to rely on the truth of that representation, which she did, thus causing damages.

68.    Dr. Michele-Nealon Woods stated the comments made by Dr. Darlene Perry were made prior to the Student Affairs Committee referral and that they did not play a significant part in Ms. Fleming's dismissal.

69.    Dr. Michele Nealon Woods thus concealed the fact that Dr. Darlene Perry's comments were not made prior to the Student Affairs Committee referral and that they were significant in the decision of the committee, thus causing damages to Ms. Fleming.

70.    Dr. Michele-Nealon Woods concealed the fact that Ms. Fleming was entitled to a hearing to have the erroneous comments made by Dr. Darlene Perry removed from her record through the rights provided through the Family Education Rights and Privacy Act.

71.    Dr. Michele Nealon Woods thus made a false statement of material fact that she knew to be false with the intent to induce Ms. Fleming to rely on the truth of that representation, which she did, thus causing damages.

72.    Dr. Michele Nealon Woods stated at the end of her response to the IBHE that she hoped that letter would provide a resolution to the issues presented by Ms. Fleming.

73.    Dr. Michele Nealon Woods thus made a false statement of material fact that she knew to be false with the intent to induce Ms. Fleming to rely on the truth of that representation, thus causing damages.

74.    Dr. Michele Nealon Woods stated in her October 14, 2010 response to the IBHE that TCS did not agree with the statements of Ms. Fleming claiming the "Theories of Counseling and Psychotherapy" course did not adequately prepare students to complete their practicum/internships.

75.    Dr. Michele Nealon-Woods again made a false statement of material fact, as the faculty of the Forensic Psychology Department were fully aware of student issues and had commented on such issues and complaints regarding the fact that the "Theories of Counseling and Psychotherapy" course did not adequately prepare students for their practicum/internships.

76.     Dr. Michele Nealon-Woods concealed the fact that there was an issue of a lack of proper academic instruction to prepare the Forensic Psychology students for completion of the program.

77.     Dr. Michele Nealon-Woods also concealed the fact that the information regarding the failure of the Forensic Psychology Department to adequately prepare its students for practicum/internship was well known amongst its faculty.

78.     TCS had a duty to speak of the issues regarding the lack of education provided to its students when responding to the IBHE as well as before, during, and after Ms. Fleming was dismissed.

79.     Ms. Fleming was not allowed investigation nor were her complaints taken seriously by TCS or the IBHE due to Dr. Michele Nealon-Wood's comments in her response dated October 14, 2010.

80.     Ms. Fleming relied on the comments made by Dr. Michele Nealon-Woods and would have acted differently had these concealments of fact not been made.

81.     As a result of these statements being made and these facts being concealed, Ms. Fleming suffered damages equaling four hundred and fifty thousand dollars ($450,000).

## THIRD CAUSE OF ACTION

### *DEFAMATION PER SE*

82.     Based on the factual allegations of Ms. Fleming taking and passing the "Theories of Counseling and Psychotherapy" course, her abrupt removal from her internship and assigned failure of her internship course prior to its ending, as well as the change in Ms. Fleming's academic status from good standing to dismissed, it is reasonable to conclude that Ms. Fleming's dismissal was improper.

83.    With or without this conclusion, Ms. Fleming's academic transcript shows these facts to be evident. Ms. Fleming passed all of her completed courses and held a GPA over 3.0. She earned a grade of "A" in the "Theories of Counseling and Psychotherapy" course as well as every graded course she took her final semester. She was removed from her internship and given a "fail" for the course.

84.    The facts of Ms. Fleming's tenure at TCS do not substantiate her dismissal.

85.    The "dismissal" label on Ms. Fleming's academic transcript is harmful to the plaintiff's professional standing as it attributes Ms. Fleming as lacking integrity and indicates she is unable to perform within the field of psychology or complete a graduate degree program.

86.    These statements on Ms. Fleming's academic transcript are so egregious that they will always be considered defamatory and are assumed to harm the plaintiff's reputation.

87.    The statement of "dismissal" on Ms. Fleming's academic transcript attributes to the plaintiff a lack of ability or otherwise harms the plaintiff in her profession.

88.    As a result of the defamation per se that is continuously committed against the Plaintiff, she has been or will be damaged, as described above of at least seven hundred and fifty thousand dollars ($750,000).

## FOURTH CAUSE OF ACTION

### *CIVIL CONSPIRACY*

89.    The defendants in this case made an agreement to participate in an unlawful manner and to perform unlawful acts to cause injury to the plaintiff in furtherance of TCS's agenda.

WHEREFORE, Plaintiff prays that this Honorable Court enter judgment in Plaintiff's favor, and against the Defendants, and each of them: (a) for compensatory damages in an amount to be determined at trial, but is assessed at one million and four hundred and fifty thousand dollars ($1,450,000) in current and projected damages to the Plaintiff; (b) for injunctive and declaratory relief; and (c) together with punitive damages against the Defendants and further relief as justice requires.

DATED this 13th day of October, 2015

By _____
Jessica Fleming, pro se
8318 Vernon Avenue
Omaha, NE 68134

## CERTIFICATE OF SERVICE

I, Jessica Fleming, certify that a true copy of the foregoing will be served upon The

Chicago School of Professional Psychology within 30 days of filing by delivery of

certified copy to the Defendant's registered agent, C T CORPORATION SYSTEM, at

208 SO LASALLE ST, SUITE 814, Chicago, IL 60604, by the Cook County Sheriff's

Office.

Dated: 10/13/15