**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JESSICA FLEMING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 15 C 9036 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| THE CHICAGO SCHOOL OF | ) | |
| PROFESSIONAL PSYCHOLOGY; | ) | |
| MICHAEL FOGEL (in his | ) | |
| professional capacity); DARLENE | ) | |
| PERRY (in her professional capacity); ELLIS | ) | |
| COPELAND (in his professional capacity); | ) | |
| MICHELE NEALON-WOODS (in her | ) | |
| professional capacity); DOES I–X, inclusive of | ) | |
| the internal legal counsel for the Chicago | ) | |
| School of Professional Psychology | ) | |
| from 2008–2015, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Believing she was left unprepared for her school's masters of psychology program and

then pushed out of school, Plaintiff Jessica Fleming alleges that Defendant The Chicago School

of Professional Psychology ("TCS") and its faculty and administrators are liable for breach of

contract, fraud, defamation, and conspiracy. TCS moves to dismiss [64].[1] The Court grants the

motion, in part. Because Fleming fails to sufficiently allege specific promises made by TCS,

most of her breach of contract claims fail. But because Fleming does allege that TCS promised

that she would learn psychology theory and be able to apply it and that this promise was

breached, she may pursue that breach of contract claim. Fleming fails to allege any intent to

induce her to act; thus, her claim that a TCS employee's letter to the Illinois Board of Higher

---

[1] Fleming has not served Defendants Dr. Michael Fogel, Dr. Darlene Perry, Dr. Ellis Copeland, or Dr.
Michele Nealon-Woods.

Education defrauded her fails.  TCS fails to raise grounds for dismissal of the fraud claims

relating to Fleming's disciplinary hearing; therefore, those claims remain.  Because Fleming

alleges the publication of defamatory statements in 2010 and her knowledge of those statements

in the same year, Illinois' one-year statute of limitations for defamation claims bars her

defamation claim and the Court dismisses that claim with prejudice.  Fleming has not yet served

the other Defendants she alleges are liable for torts so the Court dismisses Fleming's civil

conspiracy claim against TCS without prejudice to reinstate it if she serves the individual

Defendants.

## BACKGROUND[2]

Fleming attended TCS from 2008 to 2010 as a forensic psychology student.  After

completing her first year, TCS required that she take a practicum involving an internship at a

practitioner site and a classroom experience at TCS.  After learning that she could not accept one

of the internships she found, Fleming instead accepted an internship with the Anixter Center.

Then upon beginning her practicum course in Fall 2009, Fleming failed her practicum mid-term

assignment.  In addition to her failed mid-term, Fleming's supervisor at Anixter noted her

---

[2] The facts in the background section are taken from plaintiff's second amended complaint and exhibits attached thereto and are presumed true for the purpose of resolving defendant's motion to dismiss.  *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).  A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009).  Where a document is referenced in the second amended complaint and central to plaintiff's claims, however, the Court may consider it in ruling on the motion to dismiss.  *Id.* The Court may also take judicial notice of matters of public record.  *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

"In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider 'any facts set forth in the complaint that that undermine the plaintiff's claim.'"  *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (quoting *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992)).  "The freedom includes exhibits attached to the complaint or documents referenced in the pleading if they are central to the claim."  *Id.* (citations omitted).  "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Id.*

troubles in reciting and applying psychology theory. Fleming received an Academic

Development Program ("ADP"), which was intended to help Fleming enhance her clinical skills

and understanding of key concepts.

Six weeks into Fleming's ADP, her professors did not believe that she was making the

necessary improvements. Fleming could not participate in her internship any longer and

received a failure for the practicum course. TCS then referred her to the Student Affairs

Committee ("SAC") for hearing in April 2010.

The SAC provides review for any concern that "may result in disciplinary action"

including "concerns about a student's academic integrity" and "concerns about a student's

professional comportment." Doc. 61-1 at 17. "The SAC conducts formal proceedings when

disciplinary action may be warranted, after all other reasonable forms of Academic Development

Plans have failed, and/or if the offense is one where an ADP would not be effective or

warranted." *Id.* "Outcomes may include dismissal of the case, requirement of an [ADP], or

disciplinary action up to and including dismissal from the school." *Id.* at 18. Fleming was

referred to the SAC's Professional Comportment subcommittee.

The SAC hearing Fleming's case did not discuss her practicum issues. Instead, they

discussed uncorroborated allegations about her, especially regarding Defendant Dr. Darlene

Perry's "Diversity" course and misstatements by Dr. Perry about Fleming's comportment in that

course. Defendant Dr. Michael Fogel, the Forensic Psychology Department Chair, presented Dr.

Perry's statements to the SAC and advocated for Fleming's dismissal. The SAC did discuss

issues with Fleming's professional comportment, including Fleming's time in Dr. Perry's class

and a situation between Fleming and a fellow student. Following the SAC, TCS dismissed

Fleming as a student based on the early end of her practicum, the evaluations of the practicum instructor and internship supervisor, and earlier academic difficulties.

Fleming timely appealed the SAC dismissal from TCS to the school's Dean of Academic Affairs, Defendant Dr. Ellis Copeland. In order to appeal, Fleming had to present new evidence, evidence of improper procedure, or new arguments not originally provided to the SAC. Fleming believed she presented all three to Dr. Copeland, providing him with assignments from Dr. Perry on which she had received "A"s—to counter what Fleming believed was a statement from Dr. Perry that Fleming had failed every assignment in the "Diversity" course—and positive feedback from other sources. Fleming also now argued that TCS was failing to prepare students to complete a practicum internship. While reviewing Fleming's appeal and materials, Copeland told her that she could return to the school as a thesis student rather than a clinical student, and she accepted. Shortly after, Copeland denied Fleming's appeal, and her dismissal became permanent. Fleming was not allowed to continue as a thesis student.

Fleming went to the Illinois Board of Higher Education ("IBHE") to petition for relief from her dismissal from TCS. Fleming asked for TCS's response to her IBHE petition, and received a letter from TCS' President, Defendant Dr. Michele Nealon-Woods. Dr. Nealon-Woods' letter to IBHE contested Fleming's position that she had been wrongly discharged from TCS and informed IBHE that Fleming's academic records would not be changed, that TCS had followed the proper procedure in the discharge, and that TCS considered the matter resolved. Two years later, in 2012, Fleming had a Family Educational Rights and Privacy Act ("FERPA") hearing and successfully had Dr. Perry's SAC comments removed from her academic file.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not

its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.

1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in

the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive

a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct.

1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.

Ct. 1955, 167 L. Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances

constituting fraud."  Fed. R. Civ. P. 9(b).  This "ordinarily requires describing the 'who, what,

when, where, and how' of the fraud, although the exact level of particularity that is required will

necessarily differ based on the facts of the case."  *AnchorBank*, 649 F.3d at 615 (citation

omitted).  Rule 9(b) applies to "all averments of fraud, not claims of fraud."  *Borsellino v.

Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).  "A claim that 'sounds in fraud'—

in other words, one that is premised upon a course of fraudulent conduct—can implicate Rule

9(b)'s heightened pleading requirements."  *Id.*

5

**ANALYSIS**

**I.     Breach of Contract (Count I)**

Fleming alleges several breach of contract claims, pleaded together under Count I, based on the contractual documents created by the TCS student handbook, course catalog, and class handouts.  In Illinois, the legal relationship between a student and school is contractual, with the terms of the contract "generally set forth in the school's catalogs and manuals." *Diperna v. Chicago Sch. of Prof'l Psychology*, No. 14-CV-57, 2015 WL 361902, at *2 (N.D. Ill. Jan. 27, 2015) (quoting *Holert v. Univ. of Chicago*, 751 F. Supp. 1294, 1300 (N.D. Ill. 1990)).  "To state a claim for breach of contract, the plaintiff must do more than simply allege that the education was not good enough.  Instead, [she] must point to an identifiable contractual promise that the defendant failed to honor." *Ross v. Creighton Univ.*, 957 F.2d 410, 416–17 (7th Cir. 1992).  But there is an additional hurdle: "[i]n the student-university context, a student may have a remedy for breach of contract . . . only if that decision was made arbitrarily, capriciously, or in bad faith." *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699, 346 Ill. App. 3d 728, 282 Ill. Dec. 77 (2004).  "A court may not overrule the academic decision of a private school 'unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *Diperna*, 2015 WL 361902, at *2 (quoting *Raethz*, 805 N.E.2d at 699).  "The burden of establishing arbitrary and capricious conduct is a heavy one" and the "plaintiff must show that [her] dismissal was 'without any discernible rational basis.'" *Frederick v. Nw. Univ. Dental Sch.*, 617 N.E.2d 382, 387, 247 Ill. App. 3d 464, 187 Ill. Dec. 174 (1993) (quoting *Holert v. Univ. of Chicago*, 751 F. Supp. 1294, 1301 (N.D. Ill. 1990)).

Fleming alleges that TCS guaranteed that any internship to which a student could apply would meet that student's practicum requirement for graduation. Fleming alleges that such a promise came from the academic catalog, but as challenged by TCS, on the Court's review, the academic catalog does not contain such a promise. *See Bogie*, 705 F.3d at 609 (an exhibit attached to a complaint overrides the complaint's fact assertions that contradict the exhibit). Fleming fails to state a claim. *Ross*, 957 F.2d at 416–17 (the student must identify the promise breached by the institution to state a claim for breach of contract).

Fleming also alleges that TCS breached contracts to provide an adequate education by (1) failing to provide appropriate internship sites and by (2) failing to teach forensic theory or application of theory, which her supervisors noted as an area of difficulty in her practicum evaluation. Again, TCS argues that Fleming fails to allege a promise. There is no promise in the student handbook or the academic catalog or course syllabi cited by the second amended complaint that contain a promise that TCS would provide appropriate internship sites to students. The Court disregards Fleming's allegations to the contrary. *Bogie*, 705 F.3d at 609.

TCS also argues that Fleming has no evidence of such a promise. But the course catalog describes TCS' "Theories of Counseling and Psychotherapy" class that Fleming took and states that "[t]he key elements, concepts, and techniques associated with each theory are discussed along with how to apply each theory to diverse populations within various therapeutic and forensic settings." Doc. 61-2 at 22. Fleming alleges that despite earning an A in her "Theories" class, she was unprepared for applying psychology theory in her practicum, and the exhibits confirm that she was unable to recite theory in her practicum internship and unprepared to apply it in real-world settings. In the best light, Fleming alleges that, more than just failing to teach her psychology theory adequately, TCS utterly failed to teach psychology theory as it had promised.

7

*See Ross*, 957 F.2d at 417 ("Similarly, a breach of contract action might exist if a student enrolled in a course explicitly promising instruction that would qualify him as a journeyman, but in which the fundamentals necessary to attain that skill were not even presented. In these cases, the essence of the plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all." (citation omitted)). Therefore, TCS is incorrect to brush off her claim as unsupported by the exhibits, and thus TCS' argument to dismiss this claim fails.

Fleming also alleges that TCS failed to honor her attempt to appeal the SAC dismissal decision, violating the academic handbook's promise to allow appeals for new evidence, new arguments, or evidence of improper procedure. TCS argues that Fleming did appeal her dismissal so she cannot claim that TCS did not give her an appeal. But TCS ignores that Fleming intends her allegations to allege something different than what TCS wants. Rather than alleging that TCS stopped her from appealing, Fleming alleges that she was prevented from having her appeal considered on the merits (based on what she considered to be new evidence) because her appeal was denied as not presenting any new evidence, new argument, or evidence of improper procedure.

But it does not matter because, as TCS argues, Fleming fails to allege arbitrary and capricious conduct arising from the appeal. While she alleges that TCS did not follow its appeal procedures, she fails to allege that any procedure or denial of the appeal was arbitrary and capricious. The exhibits and allegations demonstrate that Dr. Copeland received what Fleming described as new evidence and then considered it. While Fleming describes Dr. Copeland's decision to reject the documents as not new evidence as being made "arbitrarily, capriciously, and in bad faith," Doc. 61 ¶ 67, her conclusory description of his decision is insufficient to state

8

a claim. *See McCauley v. City of Chicago*, 671 F.3d 611, 616. She presents no allegation that allows the Court to understand how Dr. Copeland failed to exercise professional judgment or departed from a rational basis. She alleges that she submitted assignments and grades that would have already been available to the SAC committee and thus not new evidence, and the exhibits make clear that Dr. Copeland considered the appeal and considered her new evidence as well before making a decision. Although TCS might have failed to explicitly explain why Fleming's submissions were ultimately determined not to be new evidence, Fleming fails to allege how the decision to deny the appeal for lack of new evidence fell outside the thresholds of TCS's standards and of reason. Therefore, the Court finds that Fleming fails to state a claim on this point.

Fleming also alleges that she had a contract with TCS to participate in and complete her practicum. TCS argues that no such promise was made. The Court's review of the exhibits attached to the second amended complaint finds no support for Fleming's allegation, especially where she explicitly cites the course catalog and TCS's letter informing her of her dismissal as support for this alleged promise. TCS required Fleming to complete a practicum in order to graduate as a clinical psychology student, but it made no promise that she could take the practicum no matter what. Similarly, Fleming alleges that TCS breached all its contracts with Fleming when it ended her practicum internship. Again, TCS points out that Fleming fails to identify the contract that was breached or the promise in the contract that was not upheld. Fleming fails to identify any promise, and the exhibits attached to the second amended complaint contain no promise that Fleming could complete her practicum no matter the circumstances. These claims of breach of contract fail.

Fleming also alleges that TCS breached its agreement in the academic handbook by sending Fleming to the SAC instead of meting out other academic discipline available. TCS points out that the academic handbook does not promise that students will be sent to alternative disciplinary activities before going to the SAC. The SAC is an option for a student that has completed an ADP or for a student for whom an ADP would not be helpful. The exhibits clearly show that Fleming completed an ADP before TCS moved on to the SAC. There is no promise that Fleming can identify as breached, and this claim fails.

Fleming also alleges that TCS breached its contract with her by presenting false evidence against her at the SAC hearing and by not allowing her to discuss her practicum internship at the hearing. TCS argues that Fleming fails to allege any arbitrary and capricious conduct in the SAC's hearing process. Fleming devotes one sentence to her allegation and alleges no conduct that departed from the standards for SAC review. Even if false, Dr. Perry's allegations about Fleming's professional comportment were suitable for a hearing of the SAC subcommittee on Professional Comportment that was discussing and reviewing Fleming's professional comportment. And while Fleming may have wanted to discuss her concerns or thoughts on her practicum internship, the academic handbook only provides students with "the right to respond in writing to the allegation . . . up to and including the time the committee meets to deliberate the case." Doc. 61-1 at 17. Therefore, Fleming alleges no conduct that substantially departed from norms that would demonstrate the SAC veered from the exercise of professional judgment. *Raethz*, 805 N.E.2d at 699 ("[A] court may not override the academic decision of a university 'unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" (quoting

*Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 225, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985))).  Thus, this claim fails.

Finally, Fleming alleges that she formed an oral contract with Dr. Copeland and that TCS breached that oral contract by denying her reinstatement.  TCS first argues that the oral offer was conditional on Fleming's reinstatement.  Fleming fleshes out in her opposition brief that Dr. Copeland offered her the ability to complete her studies as a thesis student rather than as a clinical student and that she accepted the offer after talking it over with her academic advisor.[3] Fleming accepted the offer in writing and planned to procure an internship for her thesis-track education.  However, Fleming alleges that Dr. Copeland made the offer after she had already been dismissed from the school while he was reviewing her application to appeal the SAC dismissal decision.  Knowing that he was reviewing Fleming's dismissal, it is not plausible that reinstatement was not a contingent circumstance for Dr. Copeland's oral contract.  Dr. Copeland's message to Fleming in response to her acceptance of the offer further demonstrates that his offer was contingent on reinstatement—he made clear that he was "caution[ing]" her "not to proceed further" with planning for a thesis-track education because he was still reviewing Fleming's appeal of her dismissal.  Therefore, Fleming's allegations of breach of an oral contract fail.

In summary, the Court dismisses Fleming's breach of contract claims regarding the practicum, internship sites, SAC meeting, and appeal of the SAC dismissal decision.  The Court denies the motion to dismiss as to Fleming's claim regarding the teaching of forensic theory.

---

[3] The plaintiff may supplement the pleadings with facts consistent with the complaint.  *See Help At Home Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) ("'A plaintiff need not put all of the essential facts in the complaint;' he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." (quoting *Hrubec v. Nat'l R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir. 1992))).

## II.     Fraud (Count II)

Fleming brings a fraud claim in Count II, alleging that Dr. Nealon-Woods' letter to IBHE was fraudulent and that Dr. Fogel and Dr. Perry together presented false evidence about Fleming at her SAC hearing, and that TCS is liable for both frauds. Under Illinois law, "[t]he elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591, 174 Ill. 2d 482, 221 Ill. Dec. 389 (1996).

### A.     IBHE Letter

TCS first argues that Fleming fails to allege fraud relating to the IBHE letter because Fleming alleges no falsity, inducement, reliance, or damages. The Court reviews TCS' argument that that Fleming alleges no intent by Dr. Nealon-Woods and TCS to induce Fleming to act because the argument is dispositive. Fleming alleges that Dr. Nealon-Woods sent the letter to IBHE intending to stop Fleming from further pursuing her attempts to be reinstated. But the letter clearly contradicts Fleming's allegations, and she cannot create a claim from an allegation contradicted by an exhibit. *Bogie*, 705 F.3d at 609. Dr. Nealon-Woods sent the letter to IBHE to respond to Fleming's allegations that TCS had wronged Fleming. She did this because Fleming had opened a review with IBHE. It is obvious from Dr. Nealon-Woods' response letter that she was simply responding point-by-point to each of Fleming's contentions not with an intent to defraud Fleming but rather, with an intent to provide all relevant information and positions to IBHE. Fleming's fraud claim relating to the letter to IBHE fails.

12

### B.     Dr. Fogel's Acts at the SAC Hearing

Fleming also alleges that Dr. Fogel presented false evidence against Fleming in the SAC

hearing by presenting statements from Dr. Perry that Fleming struggled in Dr. Perry's

"Diversity" class.  TCS argues that Dr. Fogel did nothing wrong.  While TCS argues that Dr.

Perry's email to Dr. Fogel about Fleming's experience in the "Diversity" class could not have

been false evidence, TCS fails to show that Dr. Perry's email was the false evidence that Fleming

alleges Dr. Fogel presented (and fails to argue that Fleming's allegations are too vague to

identify the false evidence).  TCS also states that it moves to dismiss "on the bases of

inducement, reliance and damages for the reasons set forth above," Doc. 65 at 13, but TCS says

nothing as to why there is no inducement, reliance, or damage as it relates to Dr. Fogel's alleged

wrongdoing, which is insufficient.  *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.

1995) ("A court need not make the lawyer's case."); *Curtis v. Wilks*, 704 F. Supp. 2d 771, 786–

87 (N.D. Ill. 2010) (noting that an argument that fails to apply the law to the facts "in any

meaningful fashion" waives the argument).  While there may be numerous problems with

Fleming's allegations, TCS fails to present an argument to dismiss the fraud claim.[4]  TCS'

motion fails regarding Dr. Fogel conduct at the SAC hearing.

### C.     Dr. Perry's Acts Relating to the SAC Hearing

Finally, Fleming alleges that Dr. Perry submitted misleading information to the SAC and

lied to Dr. Copeland about the information.  TCS argues that Fleming's claim fails because

Fleming fails to allege "what the lie was" from Dr. Perry, Doc. 65 at 13, essentially an argument

that Fleming has not pleaded a fraudulent statement with particularity.  Statements of fraud

---

[4] To the extent TCS makes those arguments in its reply, the Court will not consider arguments first raised in a reply brief.  *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 630 (7th Cir. 2007) ("[I]t is well-settled that arguments first made in the reply brief are waived.").

require the plaintiff to allege "who, what, when, where, and how" usually. *AnchorBank*, 649

F.3d at 615 (citation omitted). Fleming's allegations sufficiently describe Dr. Perry telling Dr.

Copeland that statements were true when they were false at the time of SAC hearing. This is

sufficient detail to describe a lie that could form the basis of a fraud claim. This does not mean

that Fleming alleges a cognizable theory of fraud based on a lie made by a third party to another

third party. *See Sec. Training Corp. v. Longman Grp. USA, Inc.*, No. 86 C 9391, 1987 WL

13566, at *1 (N.D. Ill. July 2, 1987) ("Plaintiff is not a citizen attorney general entitled to enforce

frauds allegedly committed against other parties such as the general public, students and the New

York Stock Exchange, for examples."). But TCS must raise proper arguments for dismissal, and

it has not done so.

Therefore, the Court dismisses the fraud claim as to the IBHE letter and denies the

motion to dismiss as to Dr. Fogel and Dr. Perry's acts relating to the SAC hearing.

## III.    Defamation (Count III)

Fleming alleges that TCS defamed her by its employees' conduct at the SAC hearing, by

marking her transcript with "dismissal," and by writing to the IBHE about her dismissal.[5] "To

state a claim for defamation, a plaintiff must allege (1) that the defendant made a false statement

concerning him and (2) that there was an unprivileged publication to a third party with fault by

the defendant, (3) which caused damage to the plaintiff." *Tuhey v. Illinois Tool Works, Inc.*, No.

17 C 3313, 2017 WL 3278941, at *5 (N.D. Ill. Aug. 2, 2017) (citing *Kransinski v. United Parcel

Serv., Inc.*, 530 N.E.2d 468, 471, 124 Ill. 2d 483, 125 Ill. Dec. 310 (1988)). Defamatory

---

[5] "Defamation, which includes slander and libel, has been defined as words that reflect critically upon one's integrity in her business or profession, and as a statement tending to cause harm to the reputation of another in that it lowers that person in the community's eyes or deters third persons from associating with that person." *Knoll Pharm. Co. v. Auto. Ins. Co. of Hartford*, 152 F. Supp. 2d 1026, 1037–38 (N.D. Ill. 2001) (citations omitted).

statements are actionable *per se* without allegations of damages when they involve the

imputation of an inability to perform the duties of office or employment or when they prejudice a

party or suggest a lack of ability in her trade, profession, or business. *Id.* (citing *Van Horne v.*

*Muller*, 705 N.E.2d 898, 903, 185 Ill. 2d 299, 235 Ill. Dec. 715 (1998)). Fleming pursues her

claims as defamation *per se*.

TCS argues that Fleming's defamation claims come too late. There is a one-year statute

of limitations for defamation under Illinois law. 735 Ill. Comp. Stat. 5/13–201; *Huynh v. Rivera*,

No. 10-CV-0194, 2010 WL 5676268, at *9 (N.D. Ill. Jan. 31, 2010) (noting that the statute of

limitations is the same regardless whether the defamatory act is written or verbal). The statute of

limitations runs on the date of the publication of the defamatory statement. *Yano v. City*

*Colleges of Chicago*, No. 08 C 4492, 2010 WL 4705149, at *2 (N.D. Ill. Nov. 10, 2010). It

begins to run when the communication is first published and is not restarted by further

publication or distribution of the original. *Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087,

1104 (N.D. Ill. 2016). The discovery rule applies, however, and the claim does not accrue "until

the plaintiff knew or reasonably should have known of his or her injury." *Yano*, 2010 WL

4705149, at *2. "The discovery rule should not be applied 'unless the publication was hidden,

inherently undiscoverable, or inherently unknowable.'" *Id.* (quoting *Blair v. Nevada Landing*

*P'ship*, 859 N.E.2d 1188, 1195, 369 Ill. App. 3d 318, 307 Ill. Dec. 511 (2006)). The SAC

hearing, the first change of Fleming's transcript to "Dismissal," and the TCS filing with IBHE all

occurred in 2010. Also, Fleming alleges that she learned of the statements from the SAC

hearing, received her transcript, and received TCS' response to the IBHE around the same time,

in 2010. Therefore, Fleming, by alleging defamatory content that was published in 2010 and of

which she was aware in 2010, alleges all the elements of defamation occurred more than a year

before her suit and outside the statute of limitations.  The Court dismisses this claim with prejudice as barred by the statute of limitations.

## IV.    Civil Conspiracy (Count IV)

Fleming alleges that Defendants engaged in a conspiracy.  TCS argues that there is no underlying tortious act to sustain such a claim against it.  "[C]onspiracy is not an independent tort: the conspiracy claim fails if the independent cause of action underlying the conspiracy allegation fails."  *Coghlan v. Beck*, 984 N.E.2d 132, 151, 2013 IL App (1st) 120891, 368 Ill. Dec. 407 (2013).   But conspiracy claims are useless if they only create liability for the defendant who is already liable for the tort supporting the conspiracy claim; conspiracy claims are useful when they create a defendant's liability for the torts of others.  *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988) ("[T]he function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint[.]").  There are other Defendants in this case whom Fleming alleges committed torts for which she hopes to hold TCS liable as a co-conspirator.[6]  But Fleming has not served the other Defendants yet so they have not appeared in this case.

Fleming must serve the remaining Defendants in the next fourteen days, by October 12, 2017, or face dismissal of her claims against them and the civil conspiracy claim against TCS. *See* Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the Court . . . must dismiss the action without prejudice against the defendant or order that service be made within a specified time.").  In the meantime, the Court dismisses Fleming's civil

---

[6] Of course, "the Illinois intracorporate conspiracy doctrine holds that an agent acting within the scope of his employment cannot conspire with its principal or with other agents of that principal." *Doctor's Data, Inc.*, 170 F. Supp. 3d at 1159 (citing *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571, 182 Ill. 2d 12, 230 Ill. Dec. 596 (1998)).  TCS failed to make this argument in its opening brief so the point is waived for current purposes, but it would be another reason to dismiss the claim if properly raised.

conspiracy claim against TCS without prejudice to Fleming serving the individual Defendants within the time set by the Court.

## CONCLUSION

For the foregoing reasons, the Court grants TCS's motion to dismiss [64], in part. The Court dismisses without prejudice all breach of contract claims except the claim that TCS promised to teach psychology theory to Fleming and failed to do so. The Court dismisses without prejudice Fleming's fraud claim regarding the letter to the IBHE but denies the motion as to fraud arising from the SAC hearing. The Court dismisses Fleming's defamation claims with prejudice as time-barred. The Court dismisses Fleming's civil conspiracy claim against TCS without prejudice to Fleming serving the individual Defendants in this case.

Dated: September 28, 2017
                                       _____

                                       SARA L. ELLIS
                                       United States District Judge